UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MLE XRISTENEXANADU,

        Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security Administration,

        Defendant.

CASE NO.    **C05-5703RBL**

REPORT AND
RECOMMENDATION

Noted for October 6, 2006

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

INTRODUCTION

Plaintiff, Mle Xristenexanadu, was born in 1966.  Ms. Xristenexanadu did not complete high school but she received a GED in 2003.  In addition, Ms. Xristenexanadu completed a ministry degree in 2000. Ms. Xristenexanadu is not currently married. She does, however, continue to live with her former spouse, Jeff Bacci. She has a 21 year old son and 17 year old daughter, but neither child lives with her.

Ms. Xristenexanadu's past relevant work  consists mainly of unskilled manual work.  She has work experience as a cashier, pizza delivery person, home health care aid, and janitor.  Specifically, Ms. Xristenexanadu worked as a cashier for Chevron and Goodwill in 2000-2001 and in 1997 respectively.  In

1  1994 and 1995, Ms. Xristenexanadu worked as a pizza delivery driver for Pizza Hut.  She worked for CCS

2  and Walters as a home aid between 1997 and 2001.  Most recently she did janitorial work in March, 2002.

3       Ms. Xristenexanadu has not performed substantial gainful activity since March 30, 2002, due to a

4  myriad of medical complaints.  Ms. Xristenexanadu allegedly suffers from numerous physical conditions

5  including: arthritis, Crohn's disease, deep vein thrombosis, hypothyroidism, diabetes, mild osteoarthritis,

6  fatigue and sleep apnea, reactive airway disease, fibromyalgia, and obesity. She also allegedly suffers from

7  mental conditions including: diminished understanding, somataform disorder, personality disorder, inability

8  to follow directions, a depressed mood, bi-polar disorder, anxiety, and social withdrawal.

9       On February 25, 2003, Ms. Xristenexanadu filed concurrent applications for Disability Insurance

10  Benefits and Supplemental Security Income (Tr. 96). The Social Security Administration denied Ms.

11  Xristenexanadu's applications initially on June 19, 2003 and upon reconsideration on November 17, 2003.

12  On  February 11, 2005, the matter was heard by an Administrative Law Judge ("ALJ"), and on May 17,

13  2005, the ALJ published an unfavorable decision.  The ALJ found that Ms. Xristenexanadu suffers from

14  diabetes, obesity, depression, somatization disorder, and borderline personality disorder, but found that

15  Ms. Xristenexanadu has the "residual functional capacity to perform a significant range of sedentary work"

16  and that there exist a significant number of jobs in the national economy that Ms. Xristenexanadu can

17  perform.  On August 8, 2005, Ms. Xristenexanadu requested that the Appeals Council review the ALJ's

18  decision.  The Commissioner affirmed the ALJ's decision on August 26, 2005, making the ALJ's decision

19  the administration's final decision.

20       On October 25, 2005, plaintiff filed a complaint with this court challenging the denial of her

21  applications for benefits.  Specifically, plaintiff contends: (1) the ALJ's decision regarding Plaintiff's

22  medical limitations is not supported by substantial evidence; and (2) the ALJ abused his discretion by

23  ignoring evidence of Plaintiff's severe impairments and finding that she can perform a significant range of

24  sedentary work.  Defendant counter-argues that the ALJ applied proper legal standards and the ALJ's

25  findings and conclusions are properly supported by substantial evidence in the record.

26  <u>DISCUSSION</u>

27       This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper

28  legal standard and there is substantial evidence in the record as a whole to support the decision.  <u>Hoffman</u>

v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

## A. THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

"In evaluating the evidence, the reviewing court must look at the record as a whole, weighing both the evidence that supports and detracts from the Secretary's conclusion. *Gonzalez*, 914 F.2d at 1200. The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Richardson*, 402 U.S. at 400, 91 S.Ct. at 1426-27; *Allen*, 749 F.2d at 579."  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, the ALJ reviewed the medical evidence of record as a whole and concluded at step-two in the administrative evaluation process that plaintiff had the following severe impairments: diabetes, obesity, depression, somatization disorder, and borderline personality disorder (Tr. 35).  Plaintiff argues the ALJ

erred in not finding Crohn's disease, osteoarthritis, or deep vein thrombosis ("DVT") as additional severe impairments. Plaintiff further contends the ALJ ignored medical opinion evidence of Dr. Price, Dr. Wingate, and Darlene Wood.

The record properly supports the ALJ's review and evaluation of the medical evidence.  With respect to Crohn's disease, the ALJ did not find it severe because the record did not demonstrate Crohn's disease caused any work related limitations (Tr. 29).  The ALJ noted that there were varying assessments of Plaintiff's impairments in the record, most of which did not assess Crohn's disease (Tr. 21-32). The possibility of Crohn's disease was discussed by Richard Rynes, M.D., but this was apparently based on Plaintiff's inaccurate claims that she had been diagnosed with Crohn's disease in April 2002 after an endoscopy and a colonoscopy (Tr. 27, 373).  The results of the colonoscopy and endoscopy were inconclusive (Tr. 286). The ALJ noted that Charles Donner, M.D., was suspicious of Crohn's disease in July 2002 (Tr. 23, 277). The ALJ also noted that Mark Kozakowski, D.O., assessed Crohn's disease on September 11, 2002, but this assessment was not substantiated (Tr. 24-25, 196).

Similarly, the ALJ noted that the record did not show either arthritis or DVT caused functional limitations (Tr. 23, 29). Consistent with this finding, Plaintiff does not specify her arthritis or DVT caused any significant limitations, that may not have been also caused by her other impairments. When she was discharged from the hospital in August 2002, after receiving anticoagulation therapy, Plaintiff was noted to have had "dramatic improvement" and there were no physical limitations assessed as a result of her DVT (Tr. 23-24, 338-340). A six-month medication regimen was anticipated and there is no evidence the DVT recurred (Tr. 339).  In fact, as the ALJ noted, by December 2002 physical therapist Thomas Kurtz observed Plaintiff's range of motion was within normal limits "except as limited by obesity, esp. abdominal" (Tr. 26-27, 190).

Plaintiff argues the ALJ ignored the Global Functioning score of 50 and the marked impairments in mental functioning, provided by  Dr. Price, Dr. Wingate, and Darlene Wood.   The ALJ did not rely or put significant weight on the GAF score assessed by Dr. Price and Dr. Wood or the opinion of Dr. Wingate due to the fact that their opinions were based on Plaintiff's exaggerated reports and symptoms and the ALJ found that the GAF score of 50 and Dr. Wingate's opinion are not consistent with other medical evidence in the record.

The ALJ relied on substantial evidence to support his evaluation of Plaintiff's medical impairments. The ALJ reviewed and summarized the medical findings from the following physicians: Dr. Kosakowski, Dr. Lyons, Dr. Heller, Dr. Donner, Dr. Dahl, Dr. Reed, Dr. Sun, Dr. Bodily, Dr. McKenzie, Dr. Shrewsbury, Dr. Rowlands, Dr. Wilhyde, Dr. Kirsch, Dr. Rynes, Dr. Price, Dr. Hoskins, Dr. Wingate, Dr. Van Dam, and Dr. Wood. The ALJ stated that he relied heavily on Dr. Price's diagnoses and description of her functional abilities (Tr. 29). Regarding Dr. Price's opinion, the ALJ wrote:

> It seemed to him that claimant insisted she had bipolar disorder while at the same time she was not very familiar with the symptoms that are usually associate with that diagnosis. He suspected there was a fictitious component to claimant's condition, and suspected that her condition was fixed and not likely to improve. He stated that claimant appeared capable of simple and repetitive tasks, and perhaps detailed and complex tasks she could accept instructions from supervisors and interact with coworkers and the public. She could perform certain work activities on a consistent basis. Her mental problems would interfere most with her ability to get along with others in the workplace (12F).

Tr. 29. Similarly Dr. Van Dam reported Plaintiff was not a reliable informant and that she was capable of engaging in goal-directed activities (Tr. 424). Dr. Hoskins also reported an ability to be more active than alleged, including lifting less than ten pounds, standing or walking for at least two hours in an eight-hour workday, and unlimited pushing and pulling (Tr. 379-386). As further mentioned below, the ALJ noted several discrepancies in Plaintiff's allegations, which undermined her credibility and the opinions of the medical source which relied on Plaintiff's reports and statements regarding her well being. The medical record is extensive and while it may contain some conflicting opinions, it certainly contains substantial evidence supporting the ALJ's analysis and conclusions.

**B.    THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

If the ALJ cannot determine whether a claimant is disabled based on a claimant's current work activity or on medical facts alone, and a claimant has a severe impairment(s), a review is made of the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work a claimant did in the past. 20 C.F.R. § 404.1520(e).

After reviewing the medical evidence and concluding that Plaintiff suffered from the severe impairments, noted above, the ALJ evaluated her RFC. The ALJ wrote:

> In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources , which reflect

judgments about the nature and severity fo the impairments and resulting limitation (20 C.F.R. § 404.1527 and Social Security Rulings 96-2p and 96-6p). The undesigned's explanations of some medical opinions that are given more or less weight are listed above.

The undersigned finds that claimant is not fully credible regarding her impairments. As noted above, claimants' symptoms are not entirely supported by the medical record. Dr. Price suspected there was a fictitious component to claimant's conditions. Claimant did not follow through on recommended medical treatment, as described above,. Additionally, there are multiple inconsistent reports in the file, as described above. Claimant's inconsistent reports about her education and marriage undermine the accuracy of claimant's treating sources' opinion about her limitations and abilities to function , as those reports may be based on inconsistent information. At the hearing, claimant testified that she had a high school education and lived with a roommate, not her husband. In earlier reports, she sated that she lived with her husband and completed four years of college plus self-paced ministry degrees.

Although claimant's credibility is poor, her impairments do limit her functioning. Accordingly, the undersigned finds the claimant retains the following residual functional capacity. She can lift and/or carry no more than ten pounds at a time. She can stand and/or walk for up to two hours in an eight-hour workday. She can sit for up to six hours in an eight-hour workday. She can do unlimited pushing and pulling. She can understand, remember and carry out simple instructions and can make simple work-related decisions that are necessary to function in unskilled work. She can respond appropriately to supervisors, coworkers, and usual work situations and deal with changes in a routine work setting. She cannot deal with the general public. She can perform a significant range of sedentary work.

Tr. 33.

Plaintiff argues the ALJ's RFC assessment was made in error because he did not include several aspects or symptoms of the medical record. As discussed above, the ALJ properly evaluated the medical evidence, and the ALJ's RFC assessment is consistent with that analysis. After reviewing the record, this court does not find any error in the ALJ's evaluation of Plaintiff's RFC.

## C.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF IS ABLE TO PERFORM OTHER WORK IN THE NATIONAL ECONOMY

Plaintiff argues the ALJ erred when he concluded that she was able to perform a significant range of sedentary work. The ALJ relied on the Vocational Expert's testimony at the hearing to support this finding that Plaintiff . Plaintiff argues the Vocational Expert's testimony could not be relied upon because the ALJ's hypothetical posed failed to include all of plaintiff's limitations.

At step-five the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity. See Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there

are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Plaintiff's allegation that the ALJ erred when he relied on the Vocational Expert's testimony is without merit.  Plaintiff's argument is again based on the allegation that the ALJ failed to properly take into account the medical evidence and the residual functional capacity.  As explained above, the ALJ did not err in his analysis of the medical evidence or Plaintiff's residual functional capacity.  The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).  Accordingly, the ALJ properly relied on the Vocational Expert, who testified that a person with the work history, limitations and residual functional capacity equal to Plaintiff, would be able to perform work as an addresser or  an assembler, which are available in the national economy.

CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **October 6, 2006**, as noted in the caption.

DATED this 13th day of September, 2006.

 */s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge